ALEXANDER, et al. *v.* THE FIDELITY & CASUALTY Co., et al.

No. 40618          February 3, 1958          100 So. 2d 347

*M. M. Roberts*, Hattiesburg, for appellants.

*W. E. Suddath, Jr., Watkins & Eager,* Jackson, for appellees.

ROBERDS, P. J.

On December 20, 1954, Jerry G. Alexander entered into a contract with the Mississippi State Highway De-

partment to construct a certain public road in Covington County, Mississippi. The New Amsterdam and Casualty Company became the surety on the bond of Alexander.

On January 17, 1955, Alexander sublet to W. S. Corley & Sons the construction of a certain part of said highway. The Fidelity and Casualty Company of New York became the surety on the contract of Corley.

Corley defaulted in the payment for materials furnished for the construction of said road by two creditors— W. H. Knowles in the sum of $3,517.22 and Southeastern Materials Company in the sum of $5,301.47. Both of these creditors engaged attorneys in an effort to collect their debts. Suits were filed on both claims against both contractors and their sureties. The claims were paid by the Fidelity and Casualty Company of New York. Alexander, the prime contractor, had retained the sum of $1,942.57 out of funds which had been earned by Corley. Out of such retained funds, Alexander paid $750 to counsel for Southeastern Materials Company and $450 to counsel for Knowles. That left in the hands of Alexander the sum of $742 out of the money retained by Alexander which had been earned by, but not paid to, Corley. It is claimed in this litigation that Corley was obligated under his contract and bond to pay the foregoing counsel fees, as well as the fees which might be owing to the attorney who has represented Alexander throughout the proceedings. The learned chancellor held that Corley and his bondsmen were not liable for said attorneys' fees. From that holding Alexander has appealed to this Court. Whether or not the Fidelity & Casualty Company of New York, bondsmen for Corley, is liable for the fees which have been paid to counsel for the said two creditors, and whether said casualty company is liable for such reasonable fee as counsel for Alexander may have earned for his services in these proceedings, are the questions and only questions for decisions on this appeal.

Liability for adversary fees in cases of this

type must be imposed either by statute or by contract. National Surety Company of New York v. Trustees of Runnelstown Consolidated School, 146 Miss. 277, 111 So. 445; Mississippi Fire Insurance Company v. Evans, et al., 153 Miss. 635, 120 So. 738; Union Indemnity Company v. Vetter, 40 Fed. 2d 606 (Fla. 1930) ; Fausett Builders, Inc. v. Globe Indemnity Company, 247 S. W. 2d 469 (Ark.).

There was no statute requiring Corley to pay the foregoing counsel fees. If Corley and his surety are liable for such fees, it is the result of contract between Corley and Alexander. And if Corley and his surety are liable therefor on the basis of a contract with Alexander, it is the result of references made in the bond by Corley to the prime contract of Alexander or the result of such references in the performance contract executed by Corley. We shall first deal with the references in Corley's bond. Alexander's contract made no reference to the payment of such fees, but his bond, by its recitals, did impose liability on Alexander for the fees of attorneys incurred in undertaking to collect the amounts due to said two creditors for the materials they had furnished in the construction of the road.

Corley's bond obligated him and his surety to save Alexander "harmless from all costs and damage" which Alexander might suffer by reason of the failure of Corley to fully perform his contract, and also obligated Corley to repay Alexander "all reasonable outlays and expenses" resulting from failure of Corley to carry out his contract. The question is whether the quoted phrases cover the foregoing fees of attorneys who represented Knowles and Southeastern Materials Company, as well as the services which have been rendered by the attorney for Alexander and his surety in this proceeding.

In Stearns Law of Suretyship, 5th Ed., p. 281, this statement appears: "A clause in a construction bond to the effect that the surety will pay 'any and all dam-

ages directly arising by failure of the principal to perform faithfully said contract' does not include attorney. fees incident to an action on the bond, the terms referring only to the usual and ordinary damages resulting from a breach of the contract.'' Federal Surety Company v. Basin Construction Company, 91 Mont. 114, 5 P (2d) 775.

In the case of Town of Gastonia, et al. v. McEntee-Peterson Engineering Co., et al., 42 S. E. 858 (N. C. 1902) the surety bond was conditioned to indemnify and save harmless the said town (Gastonia) and board from all suits which might be brought against the town or the board. That phrase was not sufficiently broad in the opinion of the Court to impose upon the surety a duty to pay counsel fees.

In Fausett Builders, Inc. v. Globe Indemnity Co., supra, the obligation of the surety was to ''pay over, make good and reimburse to the above named obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal.'' The principal defaulted by failing to pay for labor and materials incurred in the construction of the houses, as a result of which numerous suits were filed to enforce liens upon the buildings which had been constructed, and, in addition, the United States had taken action to collect taxes against the principal contractor. The obligee engaged attorneys and paid them fees to defend these suits and it was claimed that the provisions in the bond covered such fees. The Court posed the problem in these words: ''Where a commercial surety guarantees an owner of real estate reimbursement for 'all loss and damage (owner) may sustain by reason of failure or default' of a building contractor to perform his agreement with the owner, are attorneys' fees paid by the owner to defend suits to enforce mechanic's liens resulting from the contractor's default an item for which the owner is entitled to be reimbursed?'' The Court held that the

provisions of this bond did not cover such counsel fees. The Court remarked: "The suretyship contract must be express, as the surety's promise will never be enlarged to cover the implications growing out of the language employed. * * * A surety's liability is always measured by the express terms of his covenant, which is contained in the obligations of his principal as defined in the main contract and any applicable statute, and in the conditions of the bond."

The Court further remarked: "It would have been an easy matter to have placed such a provision in either the bond or contract, or both, had the parties so desired."

In 50 Am. Jur., Suretyship, Par. 218, p. 1047, appears this statement: "Attorneys' fees are not recoverable unless clearly within the terms of the contract or some applicable statute."

In Mississippi Fire Insurance Company v. Evans, supra, the bond stipulated that the obligor "shall fully indemnify and save harmless the owner from all costs and damage which he may suffer" by failure of Pittman, the obligor, to discharge all obligations for labor and materials. The opinion used this language: "The cross appellants complain of the refusal of the court below to award it an attorney's fee. Neither the contract nor any statute called to our attention authorizes the allowance of this fee. Therefore the court below committed no error in not allowing it." The rule is stated in these words in the syllabi: "City and board of education held not entitled to attorney's fees in suit against contractor, his surety, and materialmen for the purpose of securing an order directing distribution of balance of fund due contractor after completion of building."

In Stearns Law of Suretyship, supra, p. 13, deducing the rule to be applied to surety agreements, it is said: "The terms of the contract are given their ordinary and usual meaning, and nothing is to be read into the contract that is not implicit in the language used by the parties.

The obligation of the surety should neither be reduced nor extended by judicial construction.''

■■ It is our opinion, after diligent consideration of the question, that the words of reference above-quoted appearing in Corley's bond, do not impose upon him and his surety an obligation to pay the fees of the attorneys representing the two creditors above-mentioned, nor is such obligation imposed upon Corley and his surety to pay for the legal services rendered by counsel for Alexander and his surety in this litigation.

■■ We now deal with the effect of the reference as contained in Corley's contract. In Section 5 (a) of the contract Corley agreed: ''To be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by these documents, assumes toward the Owner.'' What has been said above as to the effect of references in the bond to the contract of the prime contractor has bearing upon the effect of such references as they appear in the contract of the subcontractor, but we shall refer to some other authorities having a more direct bearing upon the extent of the obligations assumed by Corley in his subcontract. In National Surety Company of New York v. Trustees of Runnelstown Consolidated School, supra, the bond provided that if the principal should in any manner default in the performance of any provision of the contract, or should abandon the work, the obligee would have the right to sublet the contract and take other action to enforce the rights of the trustees of the school under the contract. The contractor did default and there was extended litigation. The trustees engaged counsel and while the appeal was pending in the Supreme Court the trustees presented to the chancellor a petition setting up the details of the breach of the contract and the bond; that they had employed counsel to prosecute necessary litigation against the contractor and his surety, detailing the results obtained by such litigation, and asking for the al-

lowance by the chancery court of a reasonable fee for their counsel, with direction to pay such fee out of the original contract price which remained in the hands of the trustees at the time of the breach of the contract. The chancellor allowed the attorney's fee. The Supreme Court there employed this language:

"In the absence of a statute or contract authorizing the collection of such fees, adversary attorney's fees are not recoverable in a suit for the breach of a contract. We have no statute making the surety on a contractor's bond liable for attorney's fees incurred by the obligee in case of default by the principal and suit on the bond, and neither the contract nor the bond in the case at bar contained any such provision. This being true, we are of the opinion that the allowance of attorney's fees was erroneous."

In the case of Trimount Dredging Co., for use of Brown & Hooff, et al. v. United States Fidelity & Guaranty Company, 171 A. 700, the undertaking of the subcontractor and his bondsmen was "to indemnify and save harmless the said obligee (the general contractor), from any pecuniary loss resulting from breach of any of the terms, covenants and conditions of the said contract on the part of the said principal (the subcontractor), to be performed." The general contractor sued the surety of the subcontractor to recover the cost of labor and materials furnished to the subcontractor but not paid for by him. The Court stated the question involved in this language: "The question is whether there was any obligation undertaken by the subcontractor's surety to indemnify the general contractor against loss by reason of its undertaking with the government that all laborers and materialmen should be promptly paid." The Court held that the quoted undertaking of the surety was only the usual penal bond for completion of the work and did not contain an additional obligation to pay for labor and materials.

The reporter deduced this rule as bearing upon the question we are now considering: "Government contrac-

tor suing for use of laborers and materialmen whom sub-contractor did not pay, could not recover against surety on subcontractor's bond, where contractor, though it inserted in its contract and bond to government required clause for payment of labor and materials, did not repeat clause in subcontract and subcontractor's bond (Heard Act 40 USCA, Sec. 270)."

The Court further observed: "There is no express undertaking with the general contractor with respect to labor and material bills, the contract and bond have not been drafted to include it directly, and unless the reference to the specifications for the work may import a guarantee of payment the terms of the bond cannot be found to cover it."

Logically, it would seem that the reference in Corley's subcontract to the prime contract of Alexander, worded as it is, is directed to the carrying out of the prime contract as to type and character of the work and materials to be done and furnished under the prime contract. The provision to pay fees of counsel representing laborers and materialmen is primarily for the benefit of persons having such claims—not for the benefit of the Highway Department. The Highway Department is under no liability to pay counsel fees of claimants who furnish labor and materials, yet the reference covers responsibilities and obligations Alexander has assumed towards the "Owner", the Highway Department. "Writings which are made a part of the contract by annexation or reference will be so construed, but where the reference to another writing is made for a particular and specified purpose such other writing becomes a part of the contract for such specified purpose only." 17 C. J. S., Contracts, Section 299. In Guerini Stone Company v. P. J. Carlin Construction Company, 60 L. Ed. 636, the Court used this language: "* * * in the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing

for a particular purpose makes it a part of their agreement only for the purpose specified.''

It would appear that the reference in Corley's subcontract to the terms of the agreement, general conditions, drawings and specifications in the prime contract was for a particular purpose—define the scope and quality of the work to be done under the contract—not the assumption by the subcontractor and his surety to pay the fees of attorneys representing claimants who had furnished materials and labor in the construction of the highway. The liability of Corley and his surety to pay such fees could easily have been imposed by an express provision in Corley's contract and bond.

Affirmed.

*Hall, Lee, Holmes and Ethridge, JJ.*, concur.